RECEIVED
USDC CLERK, CHARLESTON, SC
2006 MAR 27  A 11: 36

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Keith A. Crosby, | C. A. No. 2:04-23284-PMD-RSC |
| Plaintiff, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| City of Walterboro, South Carolina, | |
| Defendant. | |

This employment discrimination case alleging retaliation for protected activity under Title VII 42 U.S.C. § 2000e-2, 3 with appended state law claims is before the undersigned United States Magistrate Judge for a Report and Recommendation on the defendant's motion for summary judgment on solely the Title VII claim. 28 U.S.C. § 636(b).

The plaintiff, Keith Crosby, sued his former employer, the City of Walterboro, South Carolina, on December 16, 2004, and alleged Walterboro Chief of Police Mike Devin discharged him on September 25, 2003, for engaging in activities protected by Title VII. The alleged protected activity was telling Dispatcher Sara Geiger that she should consult an attorney regarding alleged sexual harassment by Chief Devin during a conversation plaintiff had with Geiger. Plaintiff also brought causes of action for breach of contract/wrongful discharge, breach of contract accompanied by a fraudulent act, and breach of the implied covenant of good faith and fair dealing. Defendant's motion does

1

not seek to dismiss plaintiff's state law, contract based claims. Plaintiff seeks damages.

Discovery on the issue is complete. Oral argument on the motion was had before the undersigned on February 22, 2006. Therefore it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Unsupported speculation is not enough to withstand a motion for summary judgment. Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982).

## FACTS

In considering the defendant's motion for summary judgment, the facts, either undisputed or as presented by the plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record, are as follow.

The plaintiff, Keith Crosby (Crosby), was hired by the defendant, Walterboro Police Department (WPD), on July 6, 1996, as a patrolman. Crosby was hired by the Chief of Police at that time, Ken Authur. (Pl. Ex. 1, plf. depo. pp. 19, 29). Approximately six months after being hired, Crosby was promoted to the rank of corporal. (Pl. Ex. 1. plf. depo. p. 30). In March 2000 Mike Devin (Devin) was hired as the Chief of Police for the city of Walterboro. (Pl. Ex. 2, M. Devin depo. p. 21).

Shortly thereafter Crosby was promoted to the rank of sergeant. (Pl. Ex. 1, ph. depo. pp. 30-31). At all times during his employment with the WPD Crosby performed his job duties in a satisfactory fashion, and was otherwise viewed by his superiors and subordinates as a good officer. (Pl. Ex. 2, M. Devin depo. pp. 58-59; Ex. 3, S. Bridge depo. pp. 28-29).

The organization at the WPD was as follows. Devin, as Chief of Police, was the head of the department, with full authority to hire, discipline and fire. Next in command to Devin was Otis Rhoads (Rhoads), the assistant chief. Below Rhoads were two lieutenants, Chris Coursen (Coursen), who was the patrol division commander, and Ken Dasen (Dasen), who was over the administrative side of the department. As a sergeant, Crosby reported directly to Coursen. (Pl. Ex. 1, plf. depo. p. 31; Pl. Ex. 2, M. Devin depo. pp. 53-56).

On one occasion at work, Crosby overheard Devin invite female officer, Stephanie Bridge (Bridge) to his home so that they could get into his hot tub together. Crosby heard Bridge decline the invitation (Pl. Ex. 1, plf. depo. p. 40). According to Bridge, Devin repeatedly invited her into his hot tub. Sometimes during cookouts at Devin's home, Devin would invite Bridge and her husband to get into the hot tub. However, many times Devin would extend the invitation to Bridge when the two of

them were alone. Bridge always declined the invitations. (Pl. Ex. 3, S. Bridge depo. pp. 33-37).

In the summer of 2003, during work hours, Devin asked Bridge to give him a ride to a garage so that he could pick up his personal car that had just been repaired. As requested, Bridge took Devin, in her patrol car, to the garage to pick up his car. After doing so, Devin asked Bridge to follow him to his house so that they could drop his personal car off there, and then Bridge could give him a ride back to the station. Once at Devin's house, Devin got out of Bridge's car and went inside his house. While Devin was inside, Bridge got out of her car and stood by it while she waited for Devin to return. Shortly thereafter, Devin opened his front door, held up a pair of shorts and a t-shirt and asked Bridge if she wanted to get into the hot tub. Again, Bridge declined the invitation and proceeded to take Devin back to work. According to Bridge, the Chief's invitation, "threw her off for a minute", but did not upset her and she only thought it was kind of strange. In any event, Bridge interpreted it as a sincere invitation. (Pl. Ex. 3, S. Bridge depo. pp. 37-44).

Sometime during the summer of 2003, Bridge told a dispatcher named Sarah Geiger (Geiger) about the incident described above. (Pl. Ex. 3, 5, Bridge depo. pp. 45-47; Pl. Ex. 4, Geiger depo. pp. 37-39, 44). On another occasion at work, Devin had also

5

invited Geiger to his home to get into the hot tub. (Pl. Ex. 4., Geiger depo. pp. 34-35).

The protected activity that the plaintiff relies upon for his retaliation claim is an August 2003 conversation with Geiger as follows. In mid-August 2003 Crosby reported to work for his 7:00 p.m. shift after a week long vacation. Upon his arrival, Crosby heard several officers from the day shift and the current shift in the squad room talking about the incident where Devin invited Bridge into his hot tub. When Crosby asked the officers what they were talking about, they explained the details of the incident to him.

As Crosby exited the squad room, he was summoned into the dispatch room by Geiger who asked Crosby if she could talk to him. Crosby was Geiger's direct supervisor at that time. (Pl. depo. p. 40). When Crosby indicated that she could, Geiger told him that what the officers had just told him about Devin and Bridge was true. Crosby asked Geiger how she knew the information was true. In response, Geiger told Crosby that Bridge had told her about the incident. Geiger also told Crosby that Devin had done the same thing to her; she said that Devin had cornered her in the copy room and invited her to his house to get into the hot tub with him. She said Devin's invitation made her feel uncomfortable, and feel she was not free to leave. (Pl. Ex. 1, plf. depo. pp. 38-39).

6

Geiger then asked Crosby where he thought she should go from here. Crosby answered that he had heard Devin make a similar comment to Bridge in the squad room, and that if Devin was making the same comment to her, and if what he just heard happened to Bridge was true, then "it sounded like that may be a case of sexual harassment and that she needed to consult an attorney and let an attorney advise here where to go from there. I wasn't qualified to answer that question for her." (Pl. Ex. 1, plf. depo. p. 40). Officer Tommy Nease, shift corporal, was also present during the conversation. (Pl. Ex. 1, plf. depo. pp. 41, 43).

Crosby did not report the conversation to his supervisor, Lieutenant Chris Coursen, or Coursen's supervisor, Assistant Chief Otis Rhoads, or to Chief Devin, or to Devin's supervisor, or anyone else. He did not otherwise register any complaint of sexual harassment by Devin.

### LAW

Title VII, which was enacted as part of the Civil Rights Act of 1964, provides that it "shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) & (a)(1).

7

Plaintiff here alleges he was discharged in retaliation for opposing unlawful sexual harassment of co-worker Geiger. Section 704(a) of Title VII forbids retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Plaintiff does not allege direct evidence of retaliation. In the absence of direct evidence, a plaintiff may establish a *prima facie* case of retaliation by showing (1) that he engaged in protected activity under Title VII; (2) that the employer thereafter took adverse employment action against him; and (3) a sufficient causal connection existed between his protected activity and the employer's adverse action. EEOC v. Navy Federal Credit Union, 424 F.3d 397, 405-406 (4th Cir. 2005); Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996); Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985).

Defendant here moved for summary judgment on the ground that Plaintiff did not establish a *prima facie* case of retaliatory discharge because the plaintiff did not engage in protected activity.

8

There are two types of activity protected by Title VII: (1) participation; and (2) opposition. Participation applies only to activity related to a formal charge of discrimination, law suit, or similar proceeding. There is no allegation in the instant case of participation activity. Thus, plaintiff must show that he engaged in opposition activity for which he was retaliated against. "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim. Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253 (4th Cir. 1998) (citations omitted).

Case law has clarified that opposition to unlawful employment practices may take many forms, including "complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." Sumner v. United States Postal Service, 899 F.2d 203, 209 (3d Cir. 1990). In essence, a plaintiff alleging retaliation must show some form of opposition, which is communicated to the employer, followed by adverse action by the employer. As established in Sumner, however, the opposition to discriminatory

9

practices need not be made directly to managers in order to constitute protected activity, a plaintiff's complaints to her co-workers, assuming they were communicated to management, would be the type of opposition to discrimination that § 2000e-3(a) seeks to protect. Neiderlander v. Am. Video Glass Co., 80 Fed.Appx. 256, 259-261 (3d Cir. 2003). "Plaintiff's complaints to her co-workers that everyone was prejudiced and that her supervisors were racist constitute 'protected activity' under Title VII and Section 1981 because those comments were passed on to management." Mondaine v. American Drug Stores, 2006 WL 60671 (D. Kan. 2006) citing Neiderlander v. Am. Video Glass Co., 80 Fed.Appx. 256, 261 (3d Cir. 2003); Zowayyed v. Lowen Co., 735 F.Supp. 1497, 1504 (D. Kan. 1990).

Lastly, if the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. See, Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000). Finally, the burden shifts back to the employee to prove that the employer's purported reason for the action was mere pretext for retaliation. See, Id.

## DISCUSSION

Crosby has not made out a *prima facie* case of retaliation for opposition activity because he cannot establish that he ever opposed any activity made unlawful by Title VII.

10

Crosby's claim is that he engaged in protected opposition activity when he responded to Geiger's inquiry. The facts are not disputed; the dispatcher Crosby was supervising, Geiger, came to him and told him that Chief Devin had invited her and another female, Bridge, to get into his hot tub with him and asked Crosby where he thought she should go from here. Crosby answered that he had heard Devin make a similar comments to Bridge in the squad room, and that if Devin was making the same type comments to her, and if what he just heard happened to Bridge was true, then, "it sounded like that may be a case of sexual harassment and that she needed to consult an attorney and let an attorney advise here where to go from there. I wasn't qualified to answer that question for her." (Pl. Ex. 1, plf. depo. p. 40).

Crosby speculated only that what had happened might be sexual harassment, but that he did not know that and could not know that because he was not qualified to advise her on what she should do. He said she should go to a lawyer to get advise. Crosby did not encourage or tell Geiger to file a complaint with human resources, to report to anyone up the organizational chain, including Devin's superior, to contact the Equal Employment Opportunity Commission to complain, or to take any other action. His reason was that he did not know whether what Geiger had related to him constituted sexual harassment. He simply had no

11

good faith belief that it in fact did constitute illegal harassment.

Further, when Geiger reported Devin's invitations to her supervisor at the time, plaintiff Crosby, Crosby himself did nothing to communicate Geiger's report of the incidents to his superiors or to Human Resources. Crosby himself dropped the ball and did nothing to stop what he now claims was illegal sexual harassment. Crosby's own words show that he did not hold a good faith belief that Devin was sexually harassing the woman who reported the invitations to him and telling his subordinate to seek counsel elsewhere, but doing nothing himself, simply does not rise to the level of actionable opposition.

Plaintiff relies upon Neiderlander v. American Video Glass Co., 80 Fed. Appx. 256 (3rd Cir. 2003), discussed supra, for the proposition that a plaintiff's "opposition to discrimination need not be made directly to managers in order to constitute protected activity. Instead, informal complaints to coworkers constitute protected activity." (Pl. brief p. 9). That statement of the law is correct, as far as it goes. However, Neiderlander made a complaint; Crosby did not. At issue here is not whether Geiger's complaint to Crosby would be protected. It would under Neiderlander because her complaint was "a form of opposition, which [was] communicated to the employer." Id. at 259. Crosby

12

did not oppose and did not communicate anything to the employer, or anyone else for that matter.

Under these facts, it appears plaintiff has not shown that he engaged in protected activity, and his *prima facie* case fails as a result. His Title VII retaliation claim should be dismissed on that basis.

If the court accepts this report and recommendation, then the only original federal jurisdiction claim will be dismissed. 28 U.S.C. § 1367(c)(3) provides, "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [providing for supplemental jurisdiction over all claims forming the same case or controversy] if - the district court has dismissed all claims over which it has original jurisdiction... ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir. 1989).

Therefore, it is also recommended that the court exercise its discretion to decline supplemental jurisdiction over the

remaining state contract claims and dismiss them without prejudice to their being filed in state court, ending the action here.

## CONCLUSION

Accordingly, since there exists no genuine material question of fact for a jury to decide and the defendant is entitled to judgment as a matter of law, it is recommended that the defendant's summary judgment motion be granted on the Title VII cause of action and the balance of the claims dismissed without prejudice to their being brought in state court.

                                    Respectfully Submitted,

                                    Robert S. Carr
                                    United States Magistrate Judge

Charleston, South Carolina

March 27, 2006