**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| KEITH A. CROSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 2:04-23284-PMD |
| | ) | |
| CITY OF WALTERBORO, | ) | **ORDER** |
| SOUTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court upon the Magistrate Judge's recommendation that this court grant Defendant's motion for summary judgment on Plaintiff's retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, 3. The Magistrate further recommends that Plaintiff's state law claims for breach of contract, breach of contract accompanied by a fraudulent act, and breach of covenant of good faith and fair dealing be dismissed without prejudice to be brought in state court. A party may object, in writing, to a Magistrate Judge's Report and Recommendation ("R & R") within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Plaintiff has filed timely objections to the R & R.

## I. BACKGROUND

The relevant facts, either undisputed or taken in the light most favorable to Plaintiff as the non-moving party, are as follows:

The Walterboro Police Department hired Keith Crosby ("Crosby" or "Plaintiff") as a patrolman on July 6, 1996. Approximately six months after being hired, Crosby was promoted to the rank of corporal. In 2003, after Michael Devin became Chief of Police, Crosby was promoted

1

to Sergeant. At all times during his employment with the WPD, Crosby performed his job duties in a satisfactory manner, and was considered by all to be a good officer.

**The Alleged Protected Activity**

In August of 2003, Crosby reported to work for his 7:00 p.m. shift. Upon his arrival, Crosby heard several officers from the day shift and the current shift in the squad room talking about an incident where Chief Devin invited a female officer, Stephanie Bridge, to get in his hot tub.[1] When Crosby asked the officers what they were talking about, they explained the details of the incident to him.

As Crosby exited the squad room, he was summoned into the dispatch room by Sarah Geiger, a dispatcher under Crosby's direct supervision. Geiger told Crosby that what the officers had just told him about Devin and Bridge was true. Geiger told Crosby that Bridge had told her about the incident and that Devin had done the same thing to her; she said that Devin had cornered her in the copy room and invited her to his house to get in the hot tub with him. She said Devin's invitation made her feel uncomfortable, and feel she was not free to leave. Geiger then asked Crosby where he thought she should go from here. Crosby answered that he had heard Devin make a similar comment to Bridge in the squad room, and that if Devin was making the same comment to her, and if what he just heard had happened to Bridge was true, then "it sounded like that may be a case of sexual harassment and that she needed to consult an attorney and let an attorney advise her where

---

[1] In the summer of 2003, during work hours, Devin asked Bridge to give him a ride to a garage so that he could pick up his personal car that had been repaired. After doing so, Devin asked Bridge to follow him to his house so they could drop off his personal car. Once at Devin's house, Devin went in his house while Bridge waited outside. Shortly thereafter, Devin opened his front door, held up a pair of shorts and a t-shirt and asked Bridge if she wanted to get in the hot tub. Bridge declined the invitation and took Devin back to work. According to Bridge, the Chief's invitation "threw her off for a minute," but did not upset her and she only thought it was kind of strange.

to go from there. I wasn't qualified to answer that question for her." (Pl. Ex. 1, plf. depo. p. 40.) Officer Tommy Nease, shift corporal, was also present during the conversation.

Crosby did not report this conversation to his supervisor, Lieutenant Chris Coursen, or Coursen's supervison, Assistant Chief Otis Rhoads, or to Chief Devin, or to Devin's supervisor, or anyone else. He did not otherwise register any complaint of sexual harassment against Devin.

### The Adverse Employment Action

By the end of September 2003, Geiger had submitted her resignation as a dispatcher to Chief Devin. On or about September 24, 2003, Geiger hand delivered a letter to Chief Devin which was critical of Crosby. (Devin depo, exhibit 12 thereto.) The first paragraph of the Geiger's letter stated that Crosby told her that he had heard that Devin had sexually harassed Bridge. (Id.) The letter also stated that Crosby "said he believed Sgt. Bridge and [Geiger] should seek a lawsuit against the city." (Id.) Geiger's letter stated that Crosby wanted her to bring the suit so that Devin would lose his job and take "the whole back hallway" with him. (Id.) The letter further accused Crosby of being negative about other employees at the police department. (Id.) At the end of the letter, Geiger handwrote that Crosby had accused the Chief of getting "young females intoxicated in local bars." (Id.) According to Devin, he was upset and angry when he read the information in Geiger's letter. (Devin depo. p. 77.)

The next day, September 25, 2003, Devin called Crosby into his office and terminated him. In his termination letter, Devin stated that the termination was for cause and lists two reasons for the termination: (1) for a dispute which Crosby had with the EMS Director a month earlier, and (2) for "maliciously spread[ing] rumors and lies about the Chief of Police and department staff members, again in an attempt to usurp their authority." According to Devin, the charge that Crosby spread rumors refers to Geiger's allegations that Crosby accused the Chief of taking teenage girls to bars

3

and of sexually harassing employees. (Devin depo. p. 81.)

## II. STANDARD OF REVIEW

### A.     Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of the R & R to which a specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(C).

After a review of the entire record, the R & R, and Plaintiff's objections, the court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Therefore, the court adopts the Magistrate Judge's R & R in full and incorporates it by specific reference.

### B.     Legal Standard For Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### III. ANALYSIS

Title VII prohibits an employer from discriminating against an employee in retaliation for that employee's opposition to, or complaint about, an employment practice made unlawful under Title VII. *See* 42 U.S.C. § 2000e-3(a). As the Magistrate correctly noted, to establish a prima facie case of retaliation under Title VII, Plaintiff must show that: (1) he engaged in a protected activity; (2) Defendant took an adverse employment action against him; and (3) a casual connection existed between the protected activity and the adverse employment action.[2] *See, e.g., VonGuten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001); *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 180 (4th Cir. 1998). Protected activities may include 'opposition' or 'participation' activities. *See, e.g., Kubicko v. Ogden Logistics Services,* 181 F.3d 544, 512 (4th Cir. 1999); 42 U.S.C. § 2000e-3 (a) (prohibiting discrimination against an employee for opposition to

---

[2] Under the burden-shifting scheme, if Plaintiff succeeds in proving a prima facie case, the burden of going forward shifts to Defendant to provide evidence of a legitimate non-discriminatory reason for taking the adverse employment action. *See, e.g., Matvia v. Bald Head Island Manag.,* 259 F.3d 261, 271 (4th Cir. 2001); *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 248 (4th Cir. 2000). Should Defendant articulate a non-discriminatory reason, the burden then shifts back to Plaintiff to demonstrate that Defendant's proffered reason is a pretext for retaliation. *Smith,* 202 F.3d at 248.

an unlawful employment practice or because the employee has made a charge or participated in an investigation under the statute).  It is conceded that Plaintiff did not participate in any EEOC proceedings, and thus the participation category is not satisfied; however, Plaintiff claims his telling Geiger to consult an attorney regarding her potential sexual harassment claim against Devin constitutes a protected 'opposition' activity.

The Fourth Circuit defines opposition activity as activity that "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinion in order to bring attention to an employer's discriminatory activities."  *Laughlin v. Metro Wash. Airport Auth.,* 149 F.3d 253 (4th Cir. 1998);[3] *Kubicko,* ("[A]s long as an employee complains to his or her employer or participates in an employer's informal grievance procedure . . ., the employee's activities are entitled to protection under [Title VII]'s opposition clause.").

In this case, the facts regarding the alleged "opposition action" are undisputed: Geiger came to Crosby, her supervisor, and told him that Chief Devin had invited her and another female officer, Bridge, to get into his hot tub with him.  Geiger then asked Crosby what she should do.  Crosby answered that he had heard Chief Devin make a similar comment to Bridge in the squad room, and that if Devin was making similar comments to Geiger, then "it sounded like that may be a case of sexual harassment and that she needed to consult an attorney and let an attorney advise her where to go from there."  (Pl. Ex. 1, plf. depo. p. 40.)  The Magistrate found that this conversation could not constitute an opposition activity because "Crosby's own words show that he did not hold a good faith belief that Devin was sexually harassing the woman who reported the invitations to him, and

---

[3] The *Laughlin* Court additionally warned that "the scope of protection for activity falling under the participation clause is broader than for activity falling under the opposition clause."  *Laughlin,* 149 F.3d at 259 n.4.

telling his subordinate to seek counsel elsewhere, but doing nothing himself, simply does not rise to the level of actionable opposition."  (R & R at 12.)  Because he found that Crosby did not participate in a protected opposition activity, the Magistrate concluded that Crosby could not make out a prima facie case of retaliation and recommended that summary judgment be granted.

Plaintiff objects to the Magistrate's conclusion that he did not engage in a "protected activity."  Plaintiff argues that his telling Geiger that her situation "may be a case of sexual harassment" proves that he *did* have a good faith belief that sexual harassment was taking place[4] and, by encouraging her to see an attorney, he was opposing it.  Plaintiff points out that an employee need not have instituted formal proceedings under Title VII in order subsequently to invoke the protection of Title VII's retaliation provision; informal complaints to the employer will suffice.  *EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005); Mayo v. Kiwest Corp., 1996 WL 460769, *4 (4th Cir. 1996).  Courts in other circuits have even held that informal complaints to co-workers and offering support to sexual harassment victims can constitute opposition activity.  *Neiderlander v. American Video Glass Co.*, 80 Fed. Appx. 256 (3d Cir. 2003); *Lyman v. Nabil's, Inc.*, 903 F.Supp. 1443 (D. Kan. 1995).  Plaintiff therefore argues that his conversation with Geiger in which he tells her to seek the advice of an attorney fits within a broad definition of "opposition" as meant under Title VII.

The court disagrees.  Whether an employee has engaged in protected opposition activity turns upon balancing "the purpose of the Act to protect persons engaging reasonably in activities

---

[4] Plaintiff further argues that the issue of his "good faith belief" that sexual harassment had occurred is an issue of fact for the jury to decide.  The court agrees, and therefore makes its decision solely on the issue of whether Plaintiff's conduct constitutes "opposition" as meant under Title VII.

7

opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Laughlin*, 149 F.3d at 259 (internal quotation marks omitted) (ellipses in original). The Fourth Circuit holds that under this balancing test, as long as an employee *complains to his or her employer* or *participates in an employer's informal grievance procedure* in an orderly and nondisruptive manner, the employee's activities are entitled to protection under Title VII's opposition clause. *See Kubicko*, 181 F.3d at 551; *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 754 (4th Cir. 1996); *Armstrong v. Index Journal Co.,* 647 F.2d 441, 448 (4th Cir. 1981). Plaintiff correctly states that the Fourth Circuit has held that, in certain situations, conversations with co-workers can constitute opposition; however, even under the broadest definition of 'opposition' and considering the evidence in the light most favorable to Plaintiff, the conversation with Geiger was not an opposition as protected by Title VII. In the cases cited by Plaintiff in which conversations with co-workers constituted 'opposition,' the plaintiff either openly supported co-workers who had filed grievances, or made complaints of discrimination to co-workers, that were then communicated to management. *Neiderlander*, 80 Fed. Appx. 256; *Lyman*, 903 F.Supp. 1443. In his conversation with Geiger, Crosby neither encouraged Geiger to utilize formal or informal grievance procedures, nor supported her filing a complaint against Chief Devin, nor did he even express the opinion that sexual harassment took place. *See Byers v. HSBC Finance Corp*., 416 F.Supp.2d 424, 438 (E.D.Va. 2006). According to his own testimony, Crosby only speculated, in a private setting, that what had happened might be sexual harassment, but that he did not know because he "wasn't qualified to answer that question for her." (Pl. Ex. 1, plf. depo. p. 40.) Regardless of whether he actually believed sexual harassment had taken place, he took, at most, a neutral position by encouraging Geiger to consult a lawyer to get further advice. The court

therefore agrees with the Magistrate's conclusion that Plaintiff's conversation with Geiger does not constitute opposition activity protected under Title VII.

Because Plaintiff did not engage in a protected "opposition" activity, the court finds that he has failed to establish a prima facie case of retaliation under Title VII. As such, the court adopts the Magistrate's recommendation that Defendant's Motion for Summary Judgment be granted. Plaintiff does not object to the Magistrate's recommendation that Plaintiff's state law claims be dismissed without prejudice to be refiled in state court; accordingly, the court adopts that recommendation without further discussion.

## IV.  CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendant City of Walterboro's Motion for Summary Judgment is **GRANTED** as to Plaintiff's Title VII cause of action. It is further **ORDERED** that the remaining state law claims are **DISMISSED** without prejudice for refiling in state court.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**June 2, 2006.**